JOHNSON,
|,I agree with the majority that the child protection officer, in this case, was not required to give the defendant his Miranda warnings.[1] This adult defendant had already been arrested, charged with several felony offenses, and was in prison awaiting trial when this interview took place.
Unfortunately, we have other cases in our jurisprudence where Louisiana Office of Community Services (OCS) workers have acted in concert with law enforcement officers to extract a confession from a juvenile defendant without regard to the dictates of Miranda v. Arizona. See, State v. Neher, 07-2076, 969 So.2d 1252, (La.12/14/07), where the OCS agent volunteered to stand in as the juvenile defendant’s representative during his interrogation at the police station. When the juvenile requested an attorney, the OCS worker encouraged him to waive his right to an attorney, cooperate with law enforcement, and give a statement because she felt “that was the best thing for him to do.”
GUIDRY, J, concurring with reasons.
|,I respectfully concur in the majority opinion finding no reason to suppress the defendant’s statements which were made freely and voluntarily during an interview he was able to terminate at any time. A person in jail is not always “in custody” for purposes of Miranda.[1] Whether a person is in custody depends on the totality of the circumstances and whether a reasonable person would have felt he was not at liberty to terminate the interrogation and leave. Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995). See Maryland v. Shatzer, No. 08-680, — U.S. -, 130 S.Ct. 1213, — L.Ed. 2d - (2010). Thompson counsels that this Court must first set the scene according to the undisputed circumstances surrounding the interview.
In this case, Ms. Collins, the child protection officer, testified that she received information that the defendant’s girlfriend, Claudia, was possibly abusing her children. Collins then went to the parish prison to interview the defendant who is the father of the youngest child. Her job as a child protection worker required her to interview every member of the family. Collins made it clear to the defendant that she was not a law enforcement officer, and had no arrest powers. She had no training in administering Miranda warnings to crimi *1037 nal suspects. She also stated that, although she was aware that the defendant had been arrested for sexual abuse, she did not 12speak with any of the investigating police officers, did not review their reports, and did not advise them that she intended to interview the defendant.
Collins identified herself to the defendant and advised him that her agency had received a report of possible abuse or neglect of the children by their mother. Collins made it clear that her investigation focused on Claudia’s fitness as a mother, although she conceded that the defendant was also involved as a member of the household. Collins informed him that he had a right not to speak to her and that, if he chose not to answer questions, she would leave. The defendant readily agreed to speak to her. Collins stated that he then informed her that Claudia “was a good mother, and that if he hadn’t been under the influence of cocaine that the incident with Felicia wouldn’t have happened.”
Under these facts, particularly the advice Collins gave to the defendant concerning his right not to speak to her, I conclude that a reasonable person in the defendant’s position would have understood that he was free to refuse to answer the questions and to terminate the interview at any time. Accordingly, I concur in the decision of the majority, finding error in the trial court ruling suppressing the defendant’s statements because of Collins’ failure to advise the defendant of his Miranda rights. The statements were freely and voluntarily made to Collins during an interview the defendant understood he could terminate at will.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).